## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 03 2019, 9:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E. C. Leicht
Deputy Public Defender
Peru, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Abel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 3, 2019

Court of Appeals Case No.
19A-CR-806

Appeal from the
Howard Superior Court

The Honorable
Brant J. Parry, Judge

Trial Court Cause No.
34D02-1805-F4-151

**Vaidik, Chief Judge.**

# Case Summary

[1] Robert Abel contends that his five-year sentence for Level 5 felony sexual misconduct with a minor is inappropriate. We disagree and therefore affirm.

# Facts and Procedural History

[2] In September 2017, thirty-five-year-old Abel began communicating with fourteen-year-old A.G. The two began an online relationship, and Abel gave A.G. a "google watch and phone" on which he would send A.G. emails, texts, and photos. Tr. p. 9. One night in November 2017, Abel drove from his home in Bedford to A.G.'s home in Tipton County to pick up A.G. and take him back to Bedford. A.G.'s whereabouts remained unknown to his parents for almost two days. During this time, Abel and A.G. "had sexual intercourse." Appellant's App. Vol. II p. 12. Eventually, A.G. reported himself as a runaway in Bloomington, and police brought him home, where he was placed in residential treatment for four months. Police spoke with Abel about this incident, but it appears that he hasn't been charged for it. A.G. was discharged from treatment on March 21, 2018.

[3] About two months later, in the early morning hours of May 20, A.G.'s mother ("Mother") confronted A.G. as he was trying to sneak out of their home. Mother told A.G. not to leave, but he did anyway. Mother followed A.G. outside, where she saw a car pull up. A.G. got into the car. Mother, standing in the road, "frantic[al]ly" waved at the car in order to stop it, but the car drove

around her and left the area. Tr. p. 10. Mother got in her car and followed. After losing sight of the car, Mother started driving to different motels in the Kokomo area. Eventually, she found a car in the Super 8 motel parking lot that "she recognized as belonging to" Abel. Appellant's App. Vol. II p. 12. While Mother was waiting at the motel's front desk, Abel and A.G. walked into the lobby. Mother instructed the motel clerk to call 911. When police arrived, they removed a backpack from A.G. The backpack contained a "dildo," "love cuffs," multiple packages of lube, condoms, and a love note from Abel to A.G. *Id.* at 13. According to A.G., Abel gave him the items in his backpack, and the two had planned on "having sex." *Id.* However, A.G. said that he and Abel were only in the motel room for a brief time (during which time they kissed) because Abel "began freaking out about going to jail because [Mother] was after them and told [A.G.] he was going to have to take him home and leave town." *Id.* According to Abel, although he had planned on "hav[ing] sex" with A.G., he only "rubbed [A.G.'s] genitals through his underwear while [A.G.] was aroused." *Id.* In addition, Abel said that he gave A.G. a "promise ring" and told him that he would wait for him to turn eighteen to marry him. *Id.*

[4] Thereafter, the State charged Abel with Level 4 felony child solicitation and Level 4 felony sexual misconduct with a minor. Abel was released on bond. When Abel failed to appear for a pretrial hearing in October 2018, the trial court issued a warrant for his arrest. Abel was arrested on the warrant in November.

In January 2019, Abel and the State entered into a plea agreement under which Abel would plead guilty to Level 5 felony sexual misconduct with a minor, and the State would dismiss the other count. Sentencing was left to the discretion of the trial court.

According to the Presentence Investigation Report, the probation department recommended a three-year sentence, all suspended to probation with the requirement that Abel complete sex-offender counseling. *Id.* at 47. The PSI also noted that "[i]f the victim or his representative submits a victim impact statement or testifies in Court that they believe additional incarceration is appropriate, this office believes that should be in addition to the suspended time required to complete treatment." *Id.* at 46. At the sentencing hearing, Mother testified about the "considerable damage" that Abel had caused to her son. Tr. p. 10. Specifically, Mother explained that A.G. was in "intensive therapy, group, individual, psychiatric care" to address the trauma. *Id.* at 11. Mother said that when A.G. "came out at twelve as gay," neither she nor A.G.'s father "blinked an eye" but rather "greeted him with" the news. *Id.* at 12. However, Mother said that Abel then came along via "fiber optic cables and internet wi-fi" and convinced A.G. that "[he] alone could save and love him," thereby "warp[ing]" A.G.'s sense of identity. *Id.* at 11, 12. Mother asked the trial court to impose the "strongest possible sentence." *Id.* at 11. Defense counsel, however, asked the trial court to sentence Abel in accordance with the probation department's recommendation in the PSI, as "D.O.C. time" wasn't necessary for Abel's rehabilitation. *Id.* at 14.

[7] The trial court identified three aggravators: (1) the harm or injury suffered by A.G. was "significant"; (2) Abel engaged in "repeated attempts" to see A.G., even after he "had already been called out on it" for the November 2017 incident; and (3) Abel violated the terms of his pretrial release by failing to appear at a pretrial hearing. *Id.* at 14-15. The trial court identified as mitigators that Abel pled guilty and had no criminal history. However, the court did not accord either mitigator much weight because Abel received a "benefit" from his guilty plea and because having no criminal history wasn't unusual for sexual predators as "the first time a sexual predator is caught, is when they are caught being a predator." *Id.* at 15. The trial court sentenced Abel to five years, all executed.

[8] Abel now appeals his sentence.

# Discussion and Decision

[9] Abel contends that his five-year executed sentence is inappropriate and asks us to revise it to the sentence recommended in the PSI: three years suspended to probation with sex-offender counseling.

[10] Indiana Appellate Rule 7(B) provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "The court's role under Rule 7(B) is to 'leaven the outliers,' and we reserve our 7(B) authority for exceptional

cases." *Faith v. State*, 131 N.E.3d 158, 159-60 (Ind. 2019) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). Because we generally defer to the judgment of trial courts in sentencing matters, defendants have the burden of persuading us that their sentences are inappropriate. *Schaaf v. State*, 54 N.E.3d 1041, 1044-45 (Ind. Ct. App. 2016).

[11] The sentencing range for a Level 5 felony is one to six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6. Here, the trial court sentenced Abel to five years.

[12] Abel makes no argument about the nature of the offense. While the nature of the sexual contact that occurred in the motel room is not particularly egregious, it is what happened immediately before Abel and A.G. arrived at the motel that is so disturbing. Under the cover of night, Abel, a mere two months after A.G. was released from treatment, drove from Bedford to Tipton County to pick up A.G. When Mother heard A.G. sneaking out of their home, she followed him outside, where Abel was waiting in his car. When A.G. got in Abel's car, Mother stood in the road and frantically waved her arms; Abel, however, drove around Mother. Mother followed them in her car and eventually found them at the Super 8 motel.

[13] As for Abel's character, he notes that he is thirty-seven-years-old "with NO criminal history." Appellant's Br. p. 7. What he means, of course, is that he doesn't have any prior convictions. According to the probable-cause affidavit, which Abel stipulated to at sentencing, *see* Tr. p. 7, in November 2017 he and

fourteen-year-old A.G. "had sexual intercourse," Appellant's App. Vol. II p. 12. According to Mother, Abel was still under investigation for the November 2017 incident when he went to A.G.'s house in May 2018.[1] In addition, as the trial court noted, Abel violated the terms of his pretrial release by failing to appear at a pretrial hearing.

Given Abel's brazen conduct of meeting up with A.G. after the November 2017 incident and after A.G.'s four months in residential treatment, he has failed to persuade us that his five-year sentence is inappropriate.

Affirmed.

Riley, J., dissents with separate opinion.

Bradford, J., concurs.

---

[1] The record does not reveal if this incident is still being investigated.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Abel, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | Court of Appeals Case No. <br> 19A-CR-806 |

**Riley, Judge dissenting**

I respectfully dissent from the majority's decision, affirming Abel's sentence. While the probation department recommended a three-year sentence, suspended to probation, coupled with sex-offender counseling, the trial court sentenced Abel to a five-year executed sentence.

Although the record is replete with evidence that Abel is at moderate risk to reoffend and would benefit from a suspended sentence and counseling, the trial court, after hearing Mother's testimony about the damage Abel caused to her son, imposed an executed sentence without any probation or treatment. In its opinion, the majority quotes at length from Mother's testimony, reflecting the need for treatment for the victim, while at the same time, the trial court—

affirmed by the majority—actively rejects a similar request for treatment for the offender made by the probation department.

[18]     Given the "not particularly egregious" nature of the offense and the absence of any criminal history, I would reverse the trial court's decision and remand the case with instructions to sentence Abel in accordance with the probation department's recommendation. (Slip op. p. 6). Notwithstanding society's valid concerns with protecting itself, the criminal justice system must afford an opportunity for rehabilitation where reasonably possible.